**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CARNES/MELVIN BLAKE ROAD PARTNERSHIP,
a New Mexico General Partnership,

      Plaintiff,

v.                                         No. CIV 04-0792   ACT/WPL

THE ST. PAUL TRAVELERS COMPANIES, INC.,
TRAVELERS PROPERTY CASUALTY CORP.,
and TRAVELERS BOND,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment. [Doc. No. 23]. Defendants have moved for summary judgment on all three Counts of Plaintiff's Complaint and on their Affirmative Defense that this lawsuit is time-barred. The Motion has been fully briefed and the parties have filed exhibits and affidavits in support of their positions. After carefully considering the arguments and evidence presented, the Court finds that the Motion for Summary Judgment will be GRANTED as to Count IV (sic) and Count III, the claims asserted by the Plaintiff under the New Mexico Unfair Trade Practices Act and the New Mexico Unfair Insurance Practices Act. The Defendants' Motion for Summary Judgment will be DENIED as to Count I, Plaintiff's claim of breach of contract and as to Defendants' Affirmative Defense that this lawsuit is time-barred because there are disputed material issues of fact relevant to the cause

of action and the affirmative defense.

## UNDISPUTED MATERIAL FACTS

The parties agree on the following facts:

1. On April 7, 1999 Performance Bond No. B 288 53 14 was issued by Reliance Insurance Company in the amount of $211,135.75. The one page Performance Bond is attached as the first page of Exhibit E to Plaintiff's Response. [Doc. No. 25].

2. The Bond was subsequently acquired by Travelers Surety and Casualty Company, a wholly owned subsidiary of Travelers Property Casualty Corporation.

3. The Contractor/Principal on the Bond was Chava Trucking Company, the Owner/Obligee was Carnes/Melvin Blake Road Partnership, and the Project was Blake Road Mobile Home Subdivision Grading & Paving.

4. The Contract referred to in the Performance Bond was the Contract Agreement between Chava Trucking Company, Contractor, and Carnes/Melvin Blake Road Partnership for the Blake Road Mobile Home Subdivision Grading & Paving in the amount of $211,135.75. The Contract Agreement is attached as Exhibit F to Plaintiff's Response. [Doc. No. 25].

5. Pursuant to the terms of the Bond, the obligation of the Surety was as follows:

> THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.
>         ...
> Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly
>         1) Complete the Contract in accordance with its terms and conditions, or
>         2) Obtain a bid or bids for completing the Contract in accordance with its terms

and conditions, and upon determination by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as Work progresses, (even though there should be default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balance of the contract price", as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less that amount properly paid by Owner to Contractor.

6. The Bond stated, "Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due."

7. The Contract Agreement between Chava Trucking Company and Plaintiff stated that payments on the Contract were payable as follows: "Monthly partial payment for labor and material completed. Balance due upon completion of contract."

8. Plaintiff declared Chava Trucking to be in default on the Project on March 14, 2001.

9. Richard Minick, of Minick & Company, an Albuquerque company, issued the Performance Bond from Reliance Insurance to Carnes/Melvin Blake Road Partnership. Lyle Melvin, managing member for Carnes/Melvin Blake Road Partnership, personally picked up the Performance Bond from Mr. Minick.

10. Mr. Minick provided Mr. Melvin with a copy of a Power of Attorney appointing Mr. Minick as an attorney-in-fact for Reliance Insurance Company. A copy of the Power of Attorney is attached as Exhibit C to Plaintiff's Response. [Doc. No. 25].

11. On July 19, 2001, Plaintiff sent a letter to Richard Minick which read, " I hope you will be able to persuade Chava to finish the Blake Road Subdivision. But, I think we will have to

notify the bonding company as I have not been able to resolve any of our issues with them." The letter is attached as Exhibit C to Defendant's Memorandum Brief. [Doc. No. 23].

12. On October 15, 2001, Plaintiff sent a second letter to Richard Minick which read, "Our patience is wearing out with Chava, it has been over 3 months with no resolution in site [sic]. Plus I have heard from some other subcontractors that Chava may be heading into bankrupsey [sic]. Please be aware of our concern with the time it's taken. I think we will have no choice but to call their bond. Could you let me know the procedures involved with this." The letter is attached as Exhibit D to Defendant's Memorandum Brief. [Doc. No. 23].

13. On May 3, 2002, Plaintiff sent a third letter to Richard Minick which read, " We have been notified of Chava's pending bankrupsey [sic] action. Therefore, please let me know what our position should be with the Bond Company. I understand Reliance has been purchased by another company and I will await your investigation as to who we are dealing with. Thanks for your attention to this matter." The letter is attached as Exhibit E to Defendant's Memorandum Brief. [Doc. No. 23].

14. Plaintiff hired Albuquerque Excavators and Cottonwood Construction to complete the remaining work on the Contract resulting from Chava Trucking's default. The completion work was performed between June and August of 2002.

15. Plaintiff sent a letter to Travelers Insurance dated October 14, 2002 informing the company that it would be submitting a claim on the Performance Bond because Chava Trucking did not complete the Blake Road Mobile Home Subdivision Grading & Paving project. The letter is attached as Exhibit H to Defendant's Memorandum Brief. [Doc. No. 23].

16. Plaintiff filed a claim against the Performance Bond in the amount of $175,534.57.

4

The claim form and a letter are attached as Exhibits J and I to Defendant's Memorandum Brief. [Doc. No. 23].

17. On July 16, 2003, Travelers Insurance denied payment to the Plaintiff under the Performance Bond because the claim was not filed prior to completing the work. The letter denying the claim is attached as Exhibit K to Defendant's Memorandum Brief. [Doc. No. 23]."

18. Prior to declaring Chava Trucking in default, Plaintiff paid Chava Trucking a total of $141,334.25 of the $211,135.75 contract price.

19. Plaintiff filed this lawsuit on June 1, 2004.

SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" Thrasher v. B & B Chemical Co., 2 F.3d 995, 996 (10th Cir. 1993) (quoting Russillo v. Scarborough, 935 F. 2d 1167, 1170 (10th Cir. 1991).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F. 2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories and admissions on file', designate 'specific facts showing that there is a genuine issue for trial'." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for

trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Defendants moved for summary judgment on the three claims brought by the Plaintiff and on its affirmative defense that the two year time limitation "for suits under this bond" bars this lawsuit. Plaintiff's first claim is for a breach of contract under the Performance Bond. It's second claim is that Defendants violated the New Mexico Unfair Trade Practices Act, NMSA 1978 §57-12-1, et seq. (UTPA). Plaintiff's third claim is brought under the New Mexico Unfair Insurance Practices Act, NMSA 1978 §59A-16-1 et seq. (UIPA).

The Court finds that Plaintiff has failed to allege facts that would establish a claim under the UTPA or the UIPA. Plaintiff has failed to state a claim upon which relief may be found under either Count IV (sic) or Count III. But since Defendant has moved for summary judgment on these Counts, as opposed to moving for a dismissal under a Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6), and the Defendant is entitled to judgment on these two counts, Summary Judgment will be granted as to these two claims. The end result is the same. However, there are disputed material facts, as established by the exhibits and affidavit submitted by the Plaintiff, that underlie Plaintiff's breach of contract claim and the time limitation for lawsuits brought under this Performance Bond. Therefore the Defendants' Motion for Summary Judgment on the breach of contract claim and the affirmative defense that this lawsuit is time-barred is denied.

UNFAIR TRADE PRACTICES ACT

The Unfair Trade Practices Act, NMSA 1978 §57-12-1, et seq., (UTPA) is designed to provide a private remedy for those who suffer economic harm from misleading identification of a

business or goods, or false or deceptive advertising.  <u>Parker v. E. I. Du Pont De Nemours & Co.</u>, 121 N.M. 120, 909 P.2d 1 (Ct. App. 1995).  Four elements are necessary to make a claim under §57-12-2(D), the section that defines "unlawful or deceptive trade practice".  First, the complaining party must show that the party made some representation that was either false or misleading.  Secondly, the false or misleading representation must have been knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts.  Third, the conduct complained of must have occurred in the regular course of the representer's trade or commerce.  Fourth, the representation must have been of the type that may, tends to, or does deceive or mislead a person.  *See*, <u>Stevenson v. Louis Dreyfus Corp.</u>, 112 N.M. 97, 100, 811 P.2d 1308, 1300 (1991).

If a false or misleading statement was made by Defendants, Chava Trucking would have been the party to whom the statement would have been made.  The Performance Bond, issued by the Defendants' predecessor in interest, extended credit to Chava Trucking so that Chava Trucking could enter into a Contract Agreement with the Plaintiff.  The Plaintiff was not the purchaser of the Performance Bond; it was the Obligee of the Bond as the Owner of the Project, a third party beneficiary of the bond.

The complaining party who brings a claim under the UTPA must be the purchaser of goods or services, or in this scenario, the party to whom credit has been extended.  The complaining party has the standing to bring a lawsuit under the UTPA, not the third party beneficiary of the goods or services purchased by the complaining party.  *Cf.,* <u>Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.</u>, 2005-NMCA-051, ¶17, 113 P. 3d 347, 353 (only the purchaser of services has standing to bring claim under UTPA).  The complaining party

7

must be a purchaser or the party to whom credit is extended in the normal course of business. In the present case, the normal course of business was for Defendants, or their predecessor in interest, to extend credit to a contractor in the form of a performance bond so that the contractor had the necessary credit to enter into a construction contract. Since Chava Trucking is the party to whom credit was extended, not the Plaintiff, only Chava Trucking would have standing in this set of facts to bring a claim against these Defendants under the UTPA. Summary judgment is granted to the Defendants on the claims asserted in Count IV (sic) of the Complaint.

UNFAIR INSURANCES PRACTICES ACT CLAIM

Count III of Plaintiff's Complaint alleges that the failure of Defendants to pay the claim under the Performance Bond violated the New Mexico Unfair Insurances Practices Act, NMSA 1978 §59A-16-1 et seq. (UIPA). Defendants argue that claims that are predicated on a failure to pay a claim under a surety bond do not lie within the parameters of the UIPA because there are fundamental differences between contracts of insurance and surety bonds. Defendant argues that as a matter of law, the New Mexico UIPA does not allow Plaintiff to bring a cause of action on the failure to pay a surety bond. The Court finds the Defendants' analysis of surety law and the relevance of the UIPA persuasive and holds that Plaintiff's claim in Count III fails to state a claim that may be brought under the New Mexico Unfair Insurances Practices Act.

Suretyship, unlike a contract of insurance, is a contractual relationship whereby one party, the surety, promises to be answerable for the debt, default or miscarriage of another, the principal. 74 Am. Jur. 2d, Suretyship, §1, p.12. The surety makes a promise to the obligee to pay in the event the principal obligor fails to perform. The law of suretyship is governed by the principles of

contract law, the law of principal and agent and other similar legal concepts.

Restatement Third, Suretyship and Guaranty §5.

New Mexico courts have not yet analyzed in a published opinion whether the New Mexico Unfair Insurance Practices Act should apply in a suretyship relationship. However, other state courts have confronted this very issue. The majority of state courts have held that the legal framework of suretyship and guaranty law is more appropriate for determining obligations and remedies than the framework of insurance law. For example, in an extensive opinion comparing the differences between contracts of suretyship and insurance contracts, the California Supreme Court held that because of fundamental differences between the two types of contracts the remedies provided by insurance law, including remedies in tort, would not be available to contracts of suretyship. Cates Construction, Inc. v. Talbot Partners, 980 P.2d 407 (Cal. S. Ct. 1999).

California statutes, like New Mexico statutes, includes "surety" within its Insurance Code. Cates Construction, Inc. v. Talbot Partners, *supra*, at 418. The New Mexico Insurance Code, NMSA 1978, §59A-1-5, includes contracts of surety within its definition of insurance. "Insurance is a contract whereby one undertakes ... to act as surety." Plaintiff argues that since surety contracts are included in the New Mexico Insurance Code all remedies contained in the Insurance Code should be construed to apply to a breach of the contract of surety, including the UIPA.

However, as Defendants have argued, the fact that suretyship is included in the Insurance Code, does not lead to the conclusion that the UIPA is also applicable to contracts of surety. There are regulatory and administrative purposes for including suretyship under the Insurance Code, including giving authority to the state Insurance Department and the Public Regulation

9

Commission to regulate companies that provide contracts of surety in New Mexico. More specifically, the UIPA provides that the statute's remedies apply to "insureds" and their claims or an insured's coverage under a policy of insurance. NMSA 1978, §59A-16-20 (A) - (O). The statutory language does not encompass contracts of surety or claims of business practices that may arise under contracts of surety.

The Court finds that the New Mexico UIPA is not applicable to the Performance Bond and the suretyship relationship in this case. *Accord*, Ground Improvement Techniques, Inc. v. Merchants Bonding Company, 63 F. Supp. 2d 1272 (D. Colo.1999) (applying Colorado law); Cates Construction, Inc. v. Talbot Partners, 980 P.2d 407 (Cal. S. Ct. 1999); Reliance Insurance Co. v. Barile Excavating & Pipeline Co., Inc., 685 F. Supp. 72 (D. Md. 1992) (applying Florida law); Inst. of Mission Helpers of Baltimore City v. Reliance Ins. Co., 812 F. Supp. 72 (D. Md. 1992) (applying Maryland law); Great American Ins. v. N. Austin Utility, 908 S.W. 2d 415 (Texas 1995); *cf.*, Tudor Dev. Groups v. U.S.F.&G., 692 F. Supp. 461 (D. Pa.1988) (applying Pennsylvania law)( tort remedies not available to breach of surety contract). Count III of the Complaint, which alleges a claim that Defendants violated the New Mexico UIPA, fails to state a claim upon which relief can be granted. Summary judgment will be granted in favor of the Defendants on Count III.

BREACH OF CONTRACT CLAIM

The parties agree that three letters were delivered by Plaintiff to Richard Minick of Minick & Associates between July 19, 2001 to May 3, 2002 that mentioned the problems Plaintiff was having with Chava Trucking and the paving contract. The issue that is material to this claim is

whether those letters were notice to the Defendants that Chava Trucking was in default on its paving contract with the Plaintiff.

Movants submitted an affidavit of Richard Minick in which he stated that: 1) he did not have the authority to accept a notice of default on behalf of the Surety, the Defendants; 2) he did not represent to the Plaintiff that he had the authority to accept a notice of default; 3) he did not accept any notice of default from the Plaintiff for the Surety; 4) he did not represent to the Plaintiff that any communication made to him was conveyed directly to the Surety; and 5) he did not in fact convey any such communication to the Surety. In response, Plaintiff submitted its affidavit from Lyle Melvin, the managing member for the Plaintiff, that: 1) when he went to Mr. Minick's office, Mr. Minick represented to him though words and actions that he was the local agent for the Defendants' predecessor in interest, Reliance Insurance Company; 2) Mr. Minick provided Plaintiff with a copy of the power of attorney from Reliance Insurance Company; and 3) Mr. Minick did not state to the affiant that he did not have the capacity to act for Reliance Insurance Company in connection with the bond.

What is notable to the Court is that Mr. Melvin does not state in his affidavit that Mr. Minick affirmatively represented to Plaintiff that he had the capacity to receive notice for Reliance Insurance Company or its successors in interest. Likewise, Mr. Melvin does not state specifically what "words and actions" by Mr. Minick led Mr. Melvin to the conclusion that Mr. Minick was the local agent for the bonding company.

Nevertheless, based on this single affidavit by Mr. Melvin, the motion for summary judgment must be denied. It creates issues of fact that are material to the breach of contract claim. Relying on this affidavit, Plaintiff asserts that Mr. Minick had either actual or apparent

authority, created through Mr. Minick's words and actions, to receive notice of default; Plaintiff relied on Mr. Minick's actual or apparent authority; and Mr. Minick did nothing to dispel Plaintiff's belief that Mr. Minick had either actual or apparent authority to receive notice.[1] Therefore, Plaintiff argues that it should recover on the Performance Bond either: 1) because notice to Mr. Minick of Chava Trucking's default on the paving contract constituted actual notice to Defendants; or 2) if notice to Mr. Minick did not constitute actual notice to the Defendants, Defendants should be estopped from asserting a lack of notice because Plaintiff relied upon the apparent authority of Mr. Minick and neither Mr. Minick nor the Defendants did anything to dissuade Plaintiff of this apparent authority.

Suretyship law is clear that in performance bond cases that if Plaintiff did not give notice to the surety company that the contractor had breached the underlying contract, Plaintiff may not later collect on its bond. School Board of Escambia County, Florida v. TIG Premier Insurance Company, 110 F. Supp.2d 1351 (N.D. Fla. 2000); Balfour Beatty Construction, Inc. v. Colonial Ornamental Iron Works, Inc., 986 F. Supp.82 (D. Conn. 1997). That is why the affidavit and the issue it raises - whether notice to Mr. Minick was notice to the Defendants because Mr. Minick had either actual or apparent authority to receive notice - is the pivotal point on which this portion

---

[1] The Court cannot help but wonder why Mr. Minick did not advise Plaintiff he did not have authority to accept a claim and advise Plaintiff whom to contact in response to the three letters if in fact he did not have authority to accept notice of a default as he claims in his Affidavit. [Exhibit F, Doc. No. 23]. On the other hand, the Court is curious as to whether or not Plaintiff made any other effort to follow up regarding its letters before the phone call after the May 3, 2002 letter. However, the record is devoid of any evidence regarding what Mr. Minick did in response to any of Plaintiff's letters or what Mr. Melvin did to follow up or inquire as to the status of his requests to Mr. Minick. The only reference in this regard is in Paragraph 6 of Mr. Melvin's' Affidavit where he says he called Mr. Minick after receiving no response to his letter dated May 3, 2002.

of the Defendants' Motion for Summary Judgment must be denied.[2]

The Power of Attorney, issued by Reliance Insurance Company to Mr. Minick appointing him as attorney in fact "to make, execute, seal, and deliver ... any and all bonds and undertakings of suretyship" is attached as an exhibit to Defendant's Response. [Exhibit C, Doc. No. 25]. The Power of Attorney, on its face, does not authorize Mr. Minick to accept or receive notice by the Owner, the Plaintiff, to Reliance Insurance Company (or its successors in interest) of the Contractor's default. Nor does it state, however, that Mr. Minick did not have such authority.

Courts in New Mexico no longer look solely to the "plain meaning" or "four corners" of a document to determine its meaning. C.R. Anthony v. Loretta Mall Partners, 112 N.M. 504, 817 P. 2d 238 (1991). If the Court finds that a document is ambiguous, the Court will look to the intent of the parties when they entered into a contract or other agreement to help determine its meaning or effect. However, a document is considered ambiguous only if it "is reasonably and fairly susceptible of different constructions." Environmental Control, Inc. v. City of Santa Fe, 2002 NMCA-003, ¶14, 38 P. 3d 891, 896 (2002), quoting Levenson v. Mobley, 106 N.M. 399, 401, 744 P. 2d 174, 176 (1987). The courts have also stated that a "party's statement of unilateral subjective intent, without more, is insufficient to establish ambiguity in light of clear contractual language." Environmental Control, Inc. v. City of Santa Fe, *supra*, citing to Hansen v. Ford Motor Co., 120 N.M. 203, 206, 900 P. 2d 952, 955 (1995).

---

[2] Another issue, addressed in Defendants' Reply Brief [Doc. No. 26] is whether, assuming notice to Mr. Minick was notice to the Defendants, the three letters from Mr. Melvin to Mr. Minick were sufficiently clear to constitute notice that Plaintiff was declaring Chava Trucking Company in default of the Contract Agreement. *See*, L & A Contracting Company v. Southern Concrete Services, Inc., 17 F. 3d 106 (5th Cir. 1994). This opinion does not address that issue because it was not argued in support of Defendants' Motion for Summary Judgment.

Plaintiff argues that Mr. Minick affirmatively represented to Mr. Melvin that he was the agent and attorney-in-fact for the surety company and that to support this assertion, Mr. Minick provided Mr. Melvin with a copy of the Power of Attorney.  Mr. Melvin's affidavit also asserts that Mr. Minick stated that he "held a power of attorney" and that he represented to Mr. Melvin that he was the local agent for the surety company.  Plaintiff has not actually pointed out to the Court the words in the attached Power of Attorney that led it to believe that Mr. Minick had the authority to accept notice.  But the statements in the affidavit of Mr. Melvin are sufficient to raise an issue of fact whether additional or different representations were made by Mr. Minick at the time he delivered the Performance Bond to Plaintiff which could have led Plaintiff to the conclusion that the printed Power of Attorney was ambiguous or could be reasonably interpreted to give Mr. Minick the authority to act as agent in all "undertakings" relevant to the Performance Bond, including receiving notice.  Because there are material issues of fact that are shown to be disputed by the affidavit of Mr. Melvin, summary judgment must be denied on this claim.

## TIME TO SUE IN THE PERFORMANCE BOND

The Performance Bond, which is the basis of this lawsuit, states that "[a]ny suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the contract falls due."  The "contract" is the Contract Agreement between Chava Trucking Company and the Plaintiff for paving, gutter and sidewalk work in the Blake Road Mobile Home Subdivision.  The balance due on the contract, or the final payment, was to made "upon completion of contract." [Exhibit F, Doc. No. 25].  It is undisputed that Chava Trucking Company never completed its contract with the Plaintiff.

14

Defendants assert that since Plaintiff declared Chava Trucking in default on March 14, 2001 that the final payment was due then to Chava. This lawsuit was not filed until June 1, 2004, more than two years after March 14, 2001. Plaintiff counters with a letter dated June 11, 2003 from the Bankruptcy Trustee for Chava Trucking asking for a payment of $25,257.20 for paving services rendered by Chava Trucking to Plaintiff for the Isleta Shopping Center. [Exhibit A, Doc. No. 25]. Plaintiff asserts that this letter shows that the final payment due to Chava Trucking was still in dispute as late as June, 2003. Defendant countered that the project mentioned in the Bankruptcy Trustee's letter was a different project between Plaintiff and Chava Trucking Company and was not the project referred to in the Contract Agreement for paving services in the Blake Road Mobile Home Subdivision.

The Court determines, based upon the Plaintiff's exhibit, that it must find there is a disputed material issue of fact as to when final payment on the Contract Agreement was due. One court, faced with this same issue, has even held that when a subcontractor abandoned its work under a contract that "the final payment never became due". Benjamin, Inc. v. Fidelity & Casualty Co. of NY, 340 N.Y.S.2d 578, 580, 72 Misc.2d 742, 744 (S. Ct. Nassau County, N.Y. 1972). The Defendant surety company in that case sought a ruling that the contractor's lawsuit was too late because the performance bond also required that suit under the bond must be instituted within two years of the date on which the final payment under the subcontract falls due. The Court held that since there was never a final payment due, "there was no date from which the two year period of limitation could be measured." Id. The present lawsuit is distinguishable in that the paving contract, or at least the work, was finally completed in August 2002, albeit by a different contractor. One could argue that a final payment became due in August, 2002, (making

15

the lawsuit timely) when the contract was finally finished even though it wasn't due to Chava Trucking.  Nevertheless, the due date for final payment to Chava Trucking under the Contract Agreement between Chava Trucking and the Plaintiff is a disputed material issue of fact. Therefore, Defendants' Motion for Summary Judgment on their affirmative defense that this lawsuit is time-barred by the language in the Performance Bond is denied.

## CONCLUSION

Defendants' Motion for Summary Judgment is GRANTED as to Count IV (sic) and Count III of the Plaintiff's Complaint.  Judgment is entered in favor of the Defendants on those two Counts. Defendants' Motion for Summary Judgment is DENIED as to Count I of the Plaintiff's Complaint.  Defendants' Motion for Summary Judgment is also DENIED on the Defendants' Affirmative Defense that this lawsuit is time-barred.

_____
ALAN C. TORGERSON
UNITED STATES MAGISTRATE JUDGE
PRESIDING JUDGE